UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

EDWARD DOUGLAS CORNMAN,

    Defendant.
_____/

Case No. 2:21-cr-7

Hon. Hala Y. Jarbou

## OPINION

Defendant Edward Cornman pleaded guilty to one count of theft of government funds. (*See* Plea Agreement, ECF No. 24.) After accepting the plea, the Court sentenced Cornman to an eighteen-month period of incarceration. (Judgment, ECF No. 45.) Before the Court is Cornman's pro se motion to reduce his period of incarceration and have counsel appointed for him. (ECF No. 52.) The Court will deny Cornman's motion.

### I.   BACKGROUND

For almost a decade, Cornman knowingly, willfully, and fraudulently deprived the government of nearly $300,000 in Social Security Income (SSI) and Medicaid benefits. (Plea Agreement ¶¶ 2-7.) In March 2010, Cornman—then owner and operator of a construction and excavating company that averaged approximately $200,000 per year in gross revenue—applied for SSI benefits. (*Id.* ¶ 7.) In his application, to qualify for SSI and Medicaid benefits, Cornman concealed his work activities. (*Id.*) This concealment persisted until the government identified Cornman's fraudulent activities in late 2019. (*Id.*) Over this period, Cornman received $279,832.31 in SSI and Medicaid benefits and $16,508 through the Michigan Food Assistance Program. (*Id.*) A grand jury indicted Cornman for, among other things, theft of government funds in February 2021. (Indictment, ECF No. 1.)

After the grand jury indicted Cornman, he pleaded guilty to theft of government funds, violating 18 U.S.C. § 641. (Plea Agreement ¶¶ 2-3.) The other charges for which he was indicted would later be dropped as a part of the plea agreement. (*Id.* ¶ 8.) The Court accepted Cornman's plea. (Order Adopting R&R, ECF No. 28.)

After the Court accepted Cornman's plea, Cornman filed two motions regarding his sentence: (1) a motion seeking a downward departure from the U.S. Sentencing Guidelines (ECF No. 39), and (2) a motion seeking a downward variance from the advisory guideline range under the factors listed in 18 U.S.C. § 3553(a) (ECF No. 40). In support of these motions, Cornman cited his uncontroverted medical ailments:

> His diagnosis is: primary osteoarthritis involving multiple joints, muscle spasms of lower extremity, bilateral lower extremity edema, vitamin D insufficiency, anemia of chronic disease, chronic pain, long term current use of systemic steroids, status post total bilateral knee replacement, status post right hip replacement, [easy bruising], pain in both shoulder joints, weight loss, and a left elbow fracture.

(Def.'s Sent'g Mem., ECF No. 38, PageID.117.) Further, Cornman indicated that his wife and child also suffer from medical ailments, making him the only source of income for his family. (*Id.*, PageID.119-120.)

At sentencing, the Court denied Cornman's motions. (Sent'g Tr., ECF No. 54, PageID.218.) Analyzing the § 3553(a) factors, the Court acknowledged that Cornman had medical issues and familial challenges. (*Id.*, PageID.216.) But the Court determined, considering the sustained period of significant benefit fraud and Cornman's concealment of personal assets, that a variance or departure was not appropriate. (*Id.*, PageID.216-217.) The Court stressed the need for a clear message that when a person collects benefits to which they are not entitled, it undermines the benefits programs' important ends, requiring courts to impose punishments. (*Id.*, PageID.217.) And the Court noted that confinement would do just that, and that the significant medical capabilities of the Bureau of Prisons (BOP) could accommodate Cornman's medical concerns.

2

(*Id.*, PageID.218.)  Accordingly, the Court sentenced Cornman to a bottom-of-the-guidelines eighteen-month term of confinement.  (Judgment, ECF No. 45.)

On March 24, 2022, after serving one month of his sentence, Cornman requested a sentence reduction and release from confinement.  (Def.'s Med. Summ., ECF No. 52-1; Def.'s Email, ECF No. 52-2.)  Cornman again based his request on his medical conditions and familial challenges.  (*Id.*)  His medical conditions are mostly the same as they were at sentencing, except Cornman has sustained injuries while confined.

On July 5, 2022, the reviewing warden recommended that the BOP grant Cornman's request.  (Warden Letter, ECF No. 52-3.)  On September 6, 2022, after assessing the warden's recommendation, the BOP's general counsel concluded that Cornman did not qualify for a reduction in his sentence.  (BOP Decision Mem., ECF No. 52-4.)  In response, Cornman filed the instant motion with the Court on November 21, 2022, moving for a reduction in his sentence and release from confinement under 18 U.S.C. § 3582(c)(1)(A).  (ECF No. 52.)

## II.  STANDARD

Since the "dawn of the [American] Republic," federal district courts have enjoyed vast discretion when crafting and imposing sentences.  *Concepcion v. United States*, 142 S. Ct. 2389, 2395-96 (2022).  But after a sentence is crafted and imposed, the Court's discretion is cabined, and it may only modify the sentence when congressionally authorized to do so.  18 U.S.C. § 3582(c); *United States v. Houston*, 529 F. 3d 743, 753 n.2 (6th Cir. 2008).  One such authorization involves "compassionate release" sentencing reductions—which are still subject to judicial prudence and discretion-guiding criteria—under 18 U.S.C. § 3582(c)(1)(A).  *United States v. Hunter*, 12 F.4th 555, 562 (6th Cir. 2021).

Under 18 U.S.C. § 3582(c)(1)(A)'s framework, the Court may reduce an inmate's term of imprisonment upon motion of the BOP.  And, since the enactment of the First Step Act of 2018,

defendants can submit these motions themselves if they first exhaust the BOP's administrative process or wait thirty days after the warden receives their release application, whichever is first. 18 U.S.C. § 3582(c)(1)(A). When deciding these motions, the Court contemplates "three criteria: extraordinary and compelling reasons for release; the § 3553(a) factors; and any applicable policy statements." *United States v. Tomes*, 990 F.3d 500, 502 (6th Cir. 2021). The Court may only grant the motion if all three criteria militate in favor of release. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021). When any of the three criteria are lacking, the Court need not address the others. *Id.*; *Tomes*, 990 F.3d at 502.

### III.   ANALYSIS

The Court can rule on Cornman's motion. Cornman filed his application for release with the warden in March 2022 and received a recommendation from the warden on July 5, 2022. Cornman filed the instant motion on November 21, 2022. Therefore, Cornman waited to file his motion for at least thirty days after the warden received his release application. The Court does not find extraordinary and compelling reasons for a sentence reduction. Thus, the Court will analyze only the first criterion and deny Cornman's motion.

**A.     Cornman lacks extraordinary and compelling reasons for a reduction in his sentence.**

District courts may define "extraordinary and compelling on their own initiative." *Elias*, 984 F.3d at 520 (internal quotations omitted). Congress left "extraordinary and compelling" undefined and tasked the Sentencing Commission with promulgating policy statements that "describe what should be considered extraordinary and compelling reasons for a sentencing reduction." Sentencing Reform Act of 1984, § 217(a), 98 Stat. at 2023. The Sentencing Commission did just that when it promulgated U.S.S.G. § 1B1.13, which included application notes describing extraordinary and compelling reasons for reductions. *Elias*, 984 F.3d at 518. But

4

the enactment of the First Step Act of 2018 introduced an intricate question: Does § 1B1.13 apply to the newly allowed defendant-initiated reduction-of-sentence motions? *Elias*, 984 F.3d at 519. The Sixth Circuit answered no, permitting district courts to exposit their own definitions. *Id.* at 520.[1]

But "the mere fact that defining extraordinary and compelling 'is left to the district court's discretion . . . does not mean that no legal standard governs that discretion.'" *Hunter*, 12 F.4th at 562 (quoting *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 139 (2005)). The terms bear their ordinary meaning. *Id.* At the time § 3582(c)(1)(A) was enacted, "'extraordinary' was understood to mean 'most unusual,' 'far from common,' and 'having little or no precedent.'" *Id.* (citing Webster's Third New International Dictionary: Unabridged 807 (1971)). And "'[c]ompelling' meant 'forcing, impelling, driving.'" *Id.* (citing Webster's Third New International Dictionary at 463). Additionally, "facts that existed at sentencing cannot later be construed as 'extraordinary and compelling reasons' to reduce a final sentence." *Id.* at 570. To do so would "transform[] § 3582(c)(1)(A) into an unbounded resentencing statute." *Id.*

With these limiting principles in mind, Cornman's general medical conditions and familial challenges are not, as a matter of law, extraordinary and compelling reasons for a sentence reduction. Cornman's myriad medical conditions and familial struggles existed and were considered at sentencing, where the Court denied a downward departure and variance for his sentence. (Sent'g Tr., PageID.216.) In fact, Cornman admits that his medical conditions existed at sentencing. (*See* Def.'s Mot. for Reduction in Sentence, ECF. No. 52, PageID.172 (listing his

---

[1] To be sure, while not bound to do so, courts can still consider § 1B1.13 when articulating what constitutes an extraordinary and compelling reason. *Tomes*, 990 F.3d at 503 n.1.

medical conditions that existed at sentencing, which he used to support his motions for a downward departure and variance).)

True, Cornman presents new instances of medical complications that arose in confinement: falling and breaking two ribs, rupturing tendons in his wrists, breaking two toes, and increased pain levels. (Def.'s Med. Records, ECF No. 58; Def.'s Mot. for Reduction in Sentence, PageID.178-79; Gov't's Resp. Br., ECF No. 55, PageID.234 n.1.) And, unlike Cornman's medical conditions that existed at his sentencing, these new instances could be considered extraordinary and compelling. But the new instances of medical complications that Cornman presents here are neither extraordinary nor compelling.

In most cases, for a medical complication to be extraordinary and compelling, the complication will result from, or be, a terminal illness. *See, e.g.*, *Hunter*, 12 F.4th at 570 ("[Section] 3582(c)(1)(A)(i) applies, regardless of the length of sentence, to the unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner." (internal quotations omitted)). None of the new injuries suffered by Cornman are the result of a terminal illness or present such an unusual case that it would be inequitable to continue his confinement.

Even against the backdrop of Cornman's general medical conditions, nonlife-threatening injuries in confinement—like breaking a bone—are not unusual. Indeed, in a survey conducted by the Bureau of Justice Statistics, over a quarter of federal inmates reported sustaining injuries since their admission to confinement. *See Medical Problems of Prisoners*, Table 6 (June 11, 2021), https://bjs.ojp.gov/library/publications/medical-problems-prisoners/table6. None of Cornman's injuries are extraordinary, life-threatening injuries.

Moreover, Cornman does not present evidence that the BOP cannot treat these injuries and medical concerns. To the contrary, his medical records indicate that some of his medical concerns have improved during confinement. (Def.'s Med. Summ., ECF No. 52-1, PageID.186-192.) For example, the BOP's medical staff provided treatment that "essentially resolved" and "adequately controlled" some of his chronic pain. (*Id.*, PageID.191.) Additionally, the BOP's staff provided him with medical equipment that he did not use before confinement that "improved his ambulation" and "nearly resolved" some of his foot issues. (*Id.*) Simply put, all records presented to the Court indicate that the BOP can adequately manage Cornman's complications.

Finally, Cornman can care for himself and is generally independent. He can eat and bathe without assistance. (*Id.*, PageID.192.) He can use a telephone, computer, and bathroom without assistance. (*Id.*) And he can prepare snacks and transport light loads of laundry without assistance. (*Id.*) And although he needs help donning and doffing his shoes, he can dress himself. (*Id.*)

Accordingly, because Cornman's circumstances are not extraordinary or compelling reasons for a reduction in his sentence, the Court will deny his motion for such a reduction.

**B.     Cornman is not entitled to counsel for his reduction-in-sentence proceedings.**

Cornman has also moved for the appointment of counsel. With few exceptions, there is no constitutional right to counsel in postconviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). The appointment of counsel for reduction-in-sentence proceedings is left to the Court's discretion. *See United States v. Butler*, No. 18-CR-20801, 2022 WL 317753, at *6 (E.D. Mich. Feb. 2, 2022) (citing *Finley*, 481 U.S. at 555). Here, Cornman managed to write and file his motion without appointed counsel. And "[b]ecause [Defendant] has not articulated a colorable claim for compassionate release, the [C]ourt will deny his request for the appointment of counsel." *United States v. Mullins*, No. 06-20015, 2020 WL 5422300, at *3 (E.D. Mich. Sept. 10, 2020).

7

## IV. CONCLUSION

For the reasons stated, Cornman's motion lacks extraordinary and compelling reasons for a reduction in his sentence. Further, the appointment of counsel is not warranted. Accordingly, this Court will deny Cornman's motion. The Court will issue an order consistent with this Opinion.

Dated: January 4, 2023  /s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE